## ATLANTIC CITY WATER WORKS COMPANY v. ATLANTIC CITY.

A contract was entered into by the city council of Atlantic City, by ordinance, with the plaintiff, for a supply of water, calling for certain annual payments, without limit as to time, except that the city might take the water works at a valuation. *Held,* such contract was legal and binding on the city.

In covenant. On demurrer to declaration. The facts appear fully in the opinion of the court.

Argued at February Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and PARKER.

For the plaintiff, *S. H. Grey.*

For the defendant, *Slape & Stephany.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of covenant founded on articles of agreement entered into by the plaintiff and defendant, whereby the plaintiff covenanted to supply Atlantic City with water in consideration of certain privileges granted by the municipality and its stipulation to pay a specified sum annually for the use of the water in the extinguish-

ment of fires. The contract was to continue as long as the company should comply with its obligations.

The declaration sets out this agreement in full, and assigns as a breach the nonpayment of sundry sums of money alleged to be due for water supplied to a number of fire hydrants which had been erected for the use of the city. A demurrer was put in to this declaration.

The incapacity of Atlantic City to enter into the contract stated in the declaration was the principal objection pressed upon the argument on the part of the defendant. It was insisted that so far as related to Atlantic City, the agreement forming the basis of the suit was an act *ultra vires*. But this contention, manifestly, is not sustainable. The charter of the city, created in the year 1866, declares in express terms that the common council of the city shall have authority to provide by ordinance " for a supply of water for said city," and in the present instance an ordinance was duly passed and the contract in dispute entered into in pursuance of its provisions.

Nor is it perceived how the general authority thus given is in any wise restricted by the eighth clause of this charter, as was contended for by counsel. That section is in these terms, viz. : " That it shall be lawful for the city council of said city, by ordinance, to order the raising, and cause to be raised by tax, from year to year, such sum or sums of money as they shall deem expedient for defraying (among other things) the expenses of supplying the said city with water." *Pamph. L.* 1886, *p.* 319.

It was argued that inasmuch as the power of taxation was authorized to be used annually, for the purpose of supplying the city with water, thereby a limitation was implied and that the municipal authorities could not make a contract on that subject to continue for a longer term than a year.

But the authority to provide water for the public is given to the common council by a previous section of this charter, and, consequently, the clause just recited has not the restrictive effect ascribed to it. The power to raise money annually is quite as consistent with an agreement calling for annual pay-

ments through a series of years as it is with an agreement existing but for a single year. The construction claimed would debar the city from entering into any contract on any subject whose performance would endure beyond a twelvemonth. Most, if not all, municipal charters have a similar provision for annual taxation, and it has never been suggested that such a clause constituted a limitation on the power of the corporate body to make contracts.

It may be further remarked that this section, part of which has been above quoted, bestows upon the council the right to borrow money for all the purposes for which it is authorized to raise money by tax. So that it is apparent that an unlimited authority to obtain from loans the funds requisite for the performance of this contract originally existed in this city.

In the next place, it was urged that the contract in question is perpetual, it being asserted that the city had not the capacity to bind itself for an indefinite period. In the formulation of this proposition the counsel of the defendant somewhat overstated the force of the contract referred to, for, in point of fact, it has not necessarily indefinite extension in time, as by one of its clauses the city is empowered to put an end to it, whenever so minded, by a purchase of the works of the plaintiff. But waiving this, the conclusive answer to the position is that the power to provide the city with a supply of water has been conferred by the legislature upon the common council in an unqualified form, and that the court has no competency to circumscribe such a grant. It is true that if the ordinance warranting the making of this contract was an act of gross indiscretion, this court, by force of its prerogative to supervise corporations of this class, might, such ordinance having been brought before it by *certiorari*, have adjudged it to be invalid. But this ordinance has not been annulled, and not being an act *ultra vires*, the contract founded upon it is obligatory in law.

Finally, it was insisted that this covenant was illegal, for the reason that it contravenes the supplement to the Crimes act passed in 1876, (*Rev.*, *p.* 1294,) which prohibits any board of aldermen or common council from incurring obliga-

·tions in excess " of the appropriation and limit of expenditure provided by law for the purposes respectively of any such board."

Even upon the assumption that the provision referred to be applicable to the stipulations of a contract of this kind, the exception cannot prevail, inasmuch as the facts upon which the question depends are not present in this record. It does not follow that because this covenant calls for payments *in futuro* indefinitely, that, of necessity, such an obligation was in excess of the limits of expenditure that the common council could not legitimately transcend. The court cannot assume, in the absence of an averment to that effect, that such was the state of affairs. For anything that appears in this record, moneys may have been in hand, or an ordinance in existence authorizing the raising of funds adequate to the disbursements required by this contract.

The plaintiff is entitled to judgment.