323 So.2d 794 (1975)
WALLACE STEVENS, INC.
v.
LAFOURCHE PARISH HOSPITAL DISTRICT NO. 3 and South Central Bell Telephone Company.
No. 56165.
Supreme Court of Louisiana.
December 8, 1975.
John E. Conery, Lippman, Hunter & Rawls, Franklin, for plaintiff-applicant.
Victor A. Sachse, Breazeale, Sachse & Wilson, Baton Rouge, M. Robert Sutherland, Slidell, for South Central Bell Telephone Co.
Francis Dugas, Dist. Atty., Walter Naquin, Jr., Asst. Dist. Atty., for Lafourche Parish Hospital Dist. No. 3.
*795 SANDERS, Chief Justice.
Wallace Stevens, Inc. brought this suit to enjoin Lafourche Parish Hospital District No. 3 from subscribing for telecommunications services from South Central Bell Telephone Company without first receiving public bids on the telephone equipment to be placed in the hospital. The district court dismissed plaintiff's suit. Plaintiff appealed, and the Court of Appeal affirmed. La.App., 308 So.2d 299 (1975). On plaintiff's application, we granted certiorari to review the judgment of the Court of Appeal. La., 313 So.2d 246 (1975). Now concluding that the judgment of the Court of Appeal was correct, we affirm.
The Lafourche Parish Hospital District No. 3, a public body, was constructing a new hospital. Wallace Stevens, Inc. sells, distributes, leases, rents, and maintains telephone equipment. Stevens' agent contacted representatives of the hospital district, requesting an opportunity to bid on the purchase or lease and installation of the hospital's telephone equipment. The hospital district representatives contacted South Central Bell, a regulated public utility, for telephone service information. Subsequently, the hospital district agreed to subscribe for telephone services from South Central Bell. Plaintiff then filed this suit seeking to enjoin the hospital district from subscribing for telephone services without first receiving public bids, in accordance with the Louisiana Public Bid Law.
At trial, the hospital district officials testified that, after consideration, the Board of Commissioners of the hospital district decided to obtain complete telephone services from South Central Bell, including the incidental use of its telephone equipment, rather than purchasing or leasing equipment from an independent telephone equipment company. The Board of Commissioners apparently arrived at this decision because of the high initial cost of purchasing or leasing the equipment from a telephone equipment company. Thus, the primary issue is whether the hospital district's contracting for total telephone services without receiving bids is in violation of the Public Bid Law, LSA-R.S. 38:2211.
At that time, LSA-R.S. 38:2211 provided, in pertinent part:

"All public work to be done, exceeding the sum of two thousand five hundred dollars, including both labor and materials, by any public corporation or political subdivision of the state and all purchases of materials or supplies exceeding the sum of one thousand dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans and specifications as advertised; and no such public work shall be done and no such purchase shall be made except as provided in this Part. The advertisement shall be published once a week for three different weeks in a newspaper in the locality, the first advertisement to appear at least fifteen days before the opening of bids; provided that when the advertisement is published in a daily newspaper in the locality, the advertisement shall be published three times within ten days, the first advertisement to appear at least ten days before the opening of bids." (Italics ours.)
The Public Bid Law is a salutary provision designed to protect the public fisc from favoritism and exorbitant costs. Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943). The statute, however, does not apply to every contract of a governmental agency.
To fall within the above statute, a public corporation or political subdivision must either have a "public work" to be done exceeding $2500, including both labor and materials, or purchase "materials or supplies" exceeding the sum of $1000. Otherwise, there is no requirement for public bids. The amount of the expenditure here *796 is not in dispute, as the parties have stipulated that the cost of telephone service exceeds the amounts set forth in the statute. The plaintiff strongly contends that the contract involves either a purchase of materials or a public work.
Initially, we note that the hospital district contacted South Central Bell requesting telephone service. The hospital district bought no equipment, nor did it agree to buy any as part of the service contract. South Central Bell owns the equipment installed for service to a subscriber. We readily conclude, therefore, that the transaction was not a purchase of materials or supplies within the terms of the statute.
The remaining question is whether this acquisition of telephone service constitutes a "public work" within the intendment of LSA-R.S. 38:2211.
Black's Law Dictionary, p. 1781 (4th Ed. 1968) defines "public work" as:
"Works, whether of construction or adoption, undertaken and carried out by the national, state or municipal authorities, and designed to subserve some purpose of public necessity, use, or convenience; such as public buildings, roads, aqueducts, parks, etc. ... All fixed works constructed for public use ..."
In construing the Texas Public Bid Law in Employers' Casualty Co. v. Stewart Abstract Co., 17 S.W.2d 781 (1929), the Commission of Appeals stated:
"Now every contract entered into, and every work undertaken by the state, county, municipality, or other agency enumerated in the statute is necessarily, in the broadest sense, a `public work', for such agencies are public agencies and act only for the public. But obviously the words `public work' were not used in that broad sense, for that would make the statute applicable to every contract of whatsoever character, a conclusion at once unreasonable. The `public work' contemplated was meant to embrace those contracts akin to building contracts. This intention is not alone supported by the doctrine of ejusdem generis, but other language of the statute itself accentuates that construction, for it gives the right of intervention and recovery upon the bond to those persons who have furnished labor or materials `used in the construction or repair of any public building or public work.'" (Italics ours.)
In State v. A. H. Read Co., 33 Wyo. 387, 240 P. 208 (1925), the Supreme Court of Wyoming stated:
"The term `public works' is said to be defined as `all fixed works constructed for public use, as railways, docks, canals, waterworks, roads,' etc. Ellis v. Grand Rapids, 123 Mich. 567, 82 N.W. 244; Winters v. Duluth, 82 Minn. 127, 84 N. W. 788."
Finally, in Ellis v. Common Council of the City of Grand Rapids, 123 Mich. 567, 82 N.W. 244 (1900), the Supreme Court of Michigan defined the term as follows:
"The term `public works' is defined as `all fixed works constructed for public use, as railways, docks, canals, waterworks, roads, etc.'"
While the courts of other jurisdictions have thus defined the term public work, this Court has not as yet spoken on the subject. From the statutory language, however, it appears that the term means a building, physical improvement, or other fixed construction. It does not include telecommunications services that may be provided in a building or in connection with its use.
By the great weight of authority, public utility service contracts are not within the intendment of statutory bid requirements. Better Home Heat Council, Inc. v. Housing Authority, 148 Conn. 536, 172 A.2d 610 (1961); City of Vincennes v. Citizens' Gaslight Co., 132 Ind. 114, 31 N. E. 573 (1892); Arnhold v. Klug, 97 Kan.
*797 576, 155 P. 805 (1916); Reid v. Trowbridge, 78 Miss. 542, 29 So. 167 (1901); Atlantic Gas and Water Co. v. Atlantic City, 73 N.J.L. 360, 63 A. 997 (1906); William L. Black Implement Co. v. Blair, 104 N.J.L. 229, 140 A. 679 (1928); Harlem Gaslight Co. v. New York, 33 N.Y. 309 (1865); Gleason v. Dalton, 28 App.Div. 555, 51 N.Y.S. 337 (1898); Mutual Electric Co. v. Village of Pomeroy, 99 Ohio St. 75, 124 N.E. 58 (1918); Tanner v. Auburn, 37 Wash. 38, 79 P. 494 (1905); Washington Fruit and Produce Co. v. City of Yakima, 3 Wash.2d 152, 100 P.2d 8 (1940); State v. Oconto Electric Co., 165 Wis. 467, 161 N.W. 789 (1917); Annot. 128 A.L.R. 168; 64 Am.Jur.2d, Public Works and Contracts, § 47, p. 899.
Plaintiff contends that LSA-R.S. 38:2211 does not exempt regulated public utilities. It, therefore, concludes that holding the statute inapplicable to the present case would create a special exemption contrary to the legislative intent.
The Court of Appeal noted that the Louisiana Public Service Commission fixes the utility's rates and charges; that the utility cannot legally discriminate between subscribers for the same service; and that the regulation is designed to protect all customers, including governmental agencies, against exorbitant prices. The Court, however, considered the telephone company's status only as an additional reason for its judgment.
The Court of Appeal primarily held that a telephone service contract did not fall within the terms of the Public Bid Law. We agree with this rationale. We hold, as did the Court of Appeal, that the telephone service contract is neither a public work nor a purchase of materials or supplies within the intendment of LSA-R.S. 38:2211.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
DIXON, J., concurs.
SUMMERS, J., dissents.