488 So.2d 940 (1986)
AMERICAN WASTE AND POLLUTION CONTROL COMPANY
v.
MADISON PARISH POLICE JURY, the Village of Tallulah and Waste Control, Inc.
Nos. 86-C-0013 and 86-C-0032.
Supreme Court of Louisiana.
May 20, 1986.
Rehearing Denied June 19, 1986.
*941 James David Caldwell, Dist. Atty., Raymond Cannon, Thomas Bishop, Tallulah,
Ann Merrill, A.J. Gray, III, Camp, Carmouche, Barsh, Gray, Hoffman & Gill, Lake Charles, for applicants.
LeRoy Smith, Tallulah, James Rountree, Monroe, for respondent.
MARCUS, Justice.
This action involves a dispute over the letting of a contract for the collection of residential solid waste in Madison Parish and the City of Tallulah, Louisiana.
In January of 1985, the Madison Parish Police Jury advertised for bids for the collection of solid waste from residential units within the parish and the City of Tallulah.[1] The bid specifications provided for a "sole and exclusive franchise, license and privilege to provide solid waste collection, removal and disposal services ..." for a five-year period. The public bodies received bids from three contractors which were opened and taken under advisement for review by an engineering consultant and the district attorney. Waste Control, Inc. (Waste Control), a Mississippi corporation, submitted the lowest bid of $4.53 per service unit per month based upon a five-year average rate. The second lowest bid was submitted by American Waste and Pollution Control Company (American), a Louisiana corporation and wholly-owned subsidiary of Waste Management, Inc., a Delaware corporation. Its five-year average bid was $4.62 per service unit per month. The highest bid of $4.84 per service unit per month was submitted by Browning-Ferris Industries. On February 28, 1985, the police jury and the Tallulah city aldermen voted to accept the low bid of Waste Control. The contract was executed and became effective in early March.
On March 19, 1985, American filed suit against the Madison Parish Police Jury and Joe W. Thornton in his capacity as president of the jury; the Village of Tallulah[2] and Dr. L.A. Anthony in his capacity as mayor of the Village; and Waste Control, *942 Inc., seeking to enjoin the execution and/or performance of the contract awarded to Waste Control on three grounds: (1) Waste Control was not a qualified bidder; (2) the decision to award the contract to Waste Control by the city aldermen of Tallulah was made in violation of the Open Meetings Law; and (3) the application of La.R.S. 38:2225(A), a statute giving preference to Louisiana contractors over non-resident contractors on public works (the preference statute) would make American the lowest bidder on the project. After trial, the judge denied the preliminary injunction thus affirming the award of the contract to Waste Control. The court of appeal reversed and held that the award of the contract to Waste Control violated the preference statute of the public bid law and rendered the contract null and void. It remanded the case to the district court with directions that it issue a preliminary injunction enjoining the award of the contract to Waste Control and directing it to be awarded to the lowest responsible bidder after the preference statute had been applied. The court of appeal affirmed its original decision on rehearing.[3] Upon application by the public bodies and Waste Control, we granted certiorari to review the correctness of the court of appeal decision.[4]
The primary contention[5] of the public bodies and Waste Control is that the court of appeal erred in finding that the preference statute applied to the award of the instant contract. They further urge this court to declare the preference statute unconstitutional on the grounds that it violates the due process and equal protection clauses of the fourteenth amendment and the commerce clause of the United States Constitution. We agree with the public bodies and Waste Control that La.R.S. 38:2225(A) should not be applied to the award of the instant contract. Having reached this conclusion, we need not address the constitutionality of the statute.
La.R.S. 33:4169.1(A)(2) provides:
The governing authority of every parish or municipality shall have the following powers:
To grant permits, licenses, exclusive or nonexclusive franchises, or any combination thereof to garbage and trash collectors and disposers. Any exclusive franchise shall be granted only after advertising for bids, reception of bids, and awarding of the contract or contracts in accordance with the public bid laws of the state and other provisions of law.
Thus, if the contract is an exclusive franchise, such as the one here, it shall be granted only after advertising and receiving bids in accordance with the public bid law.
La.R.S. 38:2211-2226, are collectively referred to as the public bid law. La.R.S. 38:2212(A)(1)(a) provides:

*943 All public work exceeding the contract limit as defined herein, including labor, materials, and all purchases of materials or supplies exceeding the sum of five thousand dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part.
La.R.S. 38:2212, insofar as it requires advertising and obtaining competitive bids, is a prohibitory law enacted in the public's interest to help insure that tax dollars for public works are spent wisely. Competitive bidding following public advertisement is the vehicle by which government entities seek to get the lowest possible price from a responsible bidder on a public works project. Preventing exorbitant and extortionate prices as well as favoritism is the primary goal of the public bid law. Haughton Elevator Division v. State, Etc., 367 So.2d 1161 (La.1979); Wallace Stevens, Inc. v. Lafourche Parish Hospital District No. 3, 323 So.2d 794 (La. 1975); State, Through Office of Governor v. L. W. Eaton, 392 So.2d 477 (La.App. 1st Cir. 1980).
La.R.S. 38:2225 is entitled "Preference in letting contracts for public work" and provides in pertinent part:
A. In the letting of contracts for public work by any public entity, except contracts financed in whole or in part by contributions or loans from any agency of the United States government, preference shall be given to Louisiana resident contractors over nonresident contractors. Any contract awarded by a public entity for the erection, construction, alteration, or repair of any public building or structure or for any public work or improvement for which competitive bidding is not required by law must be awarded to a Louisiana resident contractor, provided there is a Louisiana resident contractor available with the expertise required for the specific job. If competitive bidding is required by law, the contract must be awarded to the Louisiana resident contractor making the lowest responsible bid if the Louisiana resident contractor's bid is not more than five percent higher than the lowest responsible nonresident bid.[[6]]
The court of appeal determined that American was a Louisiana resident contractor[7] and that Waste Control was not. It further found that American's five-year average price in its bid proposal was the lowest bid after applying the five percent preference.[8] Accordingly, it rendered the contract with Waste Control null and void. On rehearing, the public bodies and Waste Control contended that La.R.S. 38:2225(A) did not apply to a contract for public services such as the instant contract. In Wallace *944 Stevens, Inc. v. Lafourche Parish Hospital Dist. No. 3, supra, this court held that the public bid law was intended to apply to "public works," that is, "contracts for building, physical improvements and other fixed construction," and not to public service contracts (in that case a contract for telecommunication services). The public bodies and Waste Control argued that although La.R.S. 38:2225(A) is part of the public bid law it was not intended to apply to service contracts and should be strictly construed to apply to public works contracts only. In rejecting this argument, the court of appeal held that preference should be given in accordance with La.R.S. 38:2225(A) where a public body seeks to grant an exclusive franchise to a private entity for the collection and disposal of waste pursuant to La.R.S. 33:4169.1. For the reasons set forth below, we reverse.
The contract in question is a service contract and not a contract for a public work; therefore, the statutes of the public bid law, including La.R.S. 38:2225(A), are not in and of themselves applicable to the award of this contract. Wallace Stevens, Inc. v. Lafourche Parish Hospital Dist. No. 3, supra; Browning-Ferris, Inc. v. City of Monroe, 465 So.2d 882 (La.App. 2d Cir.), writ denied, 467 So.2d 538 (La.1985). The public bid law applies to this contract only because La.R.S. 33:4169.1 requires that an exclusive franchise for garbage collection and disposal be granted "after advertising and receiving bids and awarding the contract in accordance with the public bid laws of the state...." Thus, we must determine the intent and meaning of the reference to the public bid law in La. R.S. 33:4169.1.
As previously stated, the public bid law is a prohibitory law enacted in the public's interest to help insure that the governmental body gets the lowest price from a responsible bidder on a public works project. Thus, the phrase "public bid law" refers to those salutary competitive bidding provisions designed to protect the public fisc. La.R.S. 38:2225(A), the preference statute, is an obvious exception to the general rule of competitive bidding because it requires an award to one other than the lowest bidder, thereby costing the public body an amount up to five percent in excess of the lowest bid obtained. A statute limiting the application of a general rule is an exception that must be strictly construed in order to give full effect to the legislative intent of the general rule. State ex rel. Murtagh v. Dept. of City Civil Serv., 215 La. 1007, 42 So.2d 65 (1949); Succession of Andrews, 153 So.2d 470 (La.App. 4th Cir.) writ refused, 244 La. 1005, 156 So.2d 57 (1963). Such construction is particularly appropriate when, as here, the general rule is a prohibitory law.
Given the intent of the public bid law and recognizing the fact that the statutes comprising it would not ordinarily apply to a service contract, we think that the reference to the public bid law in La.R.S. 33:4169.1 refers to those statutes pertaining to the formalities and mechanics of the bidding procedures, particularly to the advertisement and reception of bids and not to the public bid law in its entirety.[9] The preference statute is not one of those statutes of the public bid law pertaining to the formalities and mechanics of the bidding procedures. Further, the preference statute reflects an obvious departure from the intent of the public bid law and should be strictly construed and applied so as not to thwart the effect of competitive bidding procedures. Hence, the court of appeal erred in applying the preference statute to the award of the contract in the instant case.
Moreover, La.R.S. 38:2225(A) does not apply to contracts "financed in whole or in part by contributions or loans from any agency of the United States government...." The record reflects that federal *945 revenue sharing funds have been used to partly finance the collection and disposal of waste for the past five years. There was also testimony that the public bodies anticipated using federal revenue sharing funds to partly fulfill the obligations under the contract with Waste Control.[10] While the court of appeal recognized that federal funds might be used, it concluded that unless the funds were "earmarked" for garbage disposal purposes, their use would not preclude the application of the preference statute. The statute makes no requirement that the contributions or loans from the federal agency be designated for a particular purpose; therefore, the court of appeal erred when it incorporated this additional requirement into the statute. Finding that federal funds have been used in the past and that the public bodies anticipated federal revenue sharing funds to be used in the future to partly finance the contract, we consider, for this additional reason, that the preference statute does not apply to the instant contract.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside. The judgment of the trial court denying the preliminary injunction is reinstated. The case is remanded to the district court for further proceedings in accordance with law. All costs of the appeal are assessed against American Waste and Pollution Control Company.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Since respondent did not claim a preference in its bid or at any time prior to execution of the contract, the local governing authorities were not afforded an opportunity to consider the claimed preference before awarding the bid or executing the contract, and respondent waived any right to contend that the authorities erred in awarding the contract without applying the preference.
NOTES
[1] The contractor was also required to offer service to all commercial units within the parish and the city.
[2] The correct designation is the "City" of Tallulah, not the "Village" of Tallulah.
[3] 480 So.2d 761 (La.App. 2d Cir.1985).
[4] Two applications were submitted. The first was by the Madison Parish Police Jury and the City of Tallulah. The second one was by the public bodies jointly with Waste Control. The applications were consolidated for oral argument and a decision on the merits. 481 So.2d 1324 (La.1986).
[5] Allegations by American that Waste Control was not a qualified bidder were abandoned at the hearing on the preliminary injunction and in brief to this court.

Allegations that the City of Tallulah violated the open meetings law when it voted to award the contract to Waste Control were apparently rejected by the trial judge when he denied the preliminary injunction. The contention is that the contract was approved without publication of a twenty-four hour notice of a special meeting. The record reflects that the attorney representing American was fully advised of the entire proceedings and was present at the meeting at which the contract was awarded. The approval of the contract was later ratified by the city aldermen. Under the circumstances, we consider this contention to be without merit.
American argues for the first time before this court that its bid is the lowest bid, notwithstanding the application of the preference statute. It noted a discrepancy in Waste Control's bid proposal: the numerical price was $4.53 per service unit per month but the written price was quoted as "Twenty-four Thousand Eight Hundred Fifteen Dollars and Thirty Four Cents." American argues that the written price should control in accordance with the bid specifications. We find no merit to this contention because it is obvious that the written price was referring to the monthly charge for the total units to be serviced rather than per single service unit and no confusion resulted.
[6] The preference statute was enacted in 1977 but it formerly provided for a preference for Louisiana contractors only if the competing contractor was from a state that provided a preference for its resident contractors. In 1984, the legislature passed Act No. 894 which substantially changed La.R.S. 2225(A) to provide for a five percent preference in favor of Louisiana resident contractors; however, the legislature made La.R.S. 38:2225(A) only temporary. Section 3 of Act No. 894 provides: "On July 1, 1987, the provisions of R.S. 38:2225(A) shall be repealed and on or after that date such provisions shall be void and of no effect."
[7] A "Louisiana resident contractor" is defined in La.R.S. 38:2211(A)(7)(a) and provides:

For the purposes of this Section, a "Louisiana resident contractor" includes any person, partnership, association, corporation, or other legal entity and is defined as one that either:
(i) Is an individual who has been a resident of Louisiana for two years or more immediately prior to bidding on work,
(ii) Is any partnership, association, corporation, or other legal entity whose majority interest is owned by and controlled by residents of Louisiana, or
(iii) For two years prior to bidding has maintained a valid Louisiana contractor's license and has operated a permanent facility in the state of Louisiana and has not had a change in ownership or control throughout those two years.
[8] The record established that the bid of American ($4.62 per service unit) was not more than five percent higher than the bid of Waste Control ($4.53 per service unit).
[9] In addition to the preference statute, La.R.S. 38:2212.1 (demolition of state buildings), 38:2213 (purchase and sale of land by public bodies, etc.) and 38:2223 (issuance of work orders and commencement of work) would not apply to the award of a contract under La.R.S. 33:4169.1.
[10] Joe Thornton, president of the Madison Parish police jury, testified that the parish spent $132,000 in federal funds for garbage collection over the past five years. Although the parish has levied a millage dedicated to waste disposal, the millage will not cover the cost of the new contract in addition to the cost of closing the parish's present landfill facility.